UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| SOUVANHY SOULISACK, | ) | 1:07-cv-00844-SMS |
| | ) | |
| Plaintiff, | ) | DECISION AND ORDER ON SOCIAL |
| v. | ) | SECURITY COMPLAINT (DOC. 1) |
| | ) | |
| MICHAEL J. ASTRUE, | ) | ORDER DIRECTING REMAND PURSUANT |
| Commissioner of Social | ) | TO SENTENCE FOUR of 42 U.S.C. § |
| Security, | ) | 405(g) |
| | ) | |
| Defendant. | ) | ORDER DIRECTING THE CLERK TO |
| | ) | ENTER JUDGMENT FOR PLAINTIFF |
| | ) | SOUVANHY SOULISACK AND AGAINST |
| | | DEFENDANT MICHAEL J. ASTRUE |

Plaintiff is represented by counsel and is proceeding with an action seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying Plaintiff's application for Supplemental Security Income benefits (SSI) under Title XVI of the Social Security Act (Act). Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to the jurisdiction of the Magistrate Judge to conduct all proceedings in this matter, including ordering the entry of final judgment.[1] The matter is currently before the Court on the parties' briefs,

---

[1] On July 12, 2007, the Honorable Oliver W. Wanger reassigned the case to the undersigned Magistrate Judge for all purposes.

1

which have been submitted without oral argument to the Honorable Sandra M. Snyder, United States Magistrate Judge.

I. <u>Procedural History</u>

On June 14, 2004, Plaintiff applied for SSI, alleging disability since June 5, 2002, due to depression, anxiety, panic attacks, and paranoia. (A.R. 58-61.) After Plaintiff's claim was denied initially and on reconsideration, Plaintiff requested a hearing before the Honorable Bert C. Hoffman, Jr., Administrative Law Judge (ALJ) of the Social Security Administration (SSA), which was held on May 9, 2006. (A.R. 14, 19.) Plaintiff appeared with a non-attorney representative and testified with the aid of a Laotian interpreter. (A.R. 14, 198-217.) On September 15, 2006, the ALJ denied Plaintiff's application for benefits. (<u>Id.</u> at 14-19.) Plaintiff appealed the ALJ's decision to the Appeals Council. After the Appeals Council denied Plaintiff's request for review on April 25, 2007, Plaintiff filed the complaint in this action on June 7, 2007. (<u>Id.</u> at 5-8.) Briefing commenced on December 7, 2007, and was completed on February 1, 2008, upon the filing of Plaintiff's reply to Defendant's brief.

II. <u>Standard and Scope of Review</u>

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," <u>Richardson v. Perales</u>, 402 U.S. 389, 402 (1971), but less than a preponderance, <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119, n. 10

(9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401. The Court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion; it may not simply isolate a portion of evidence that supports the decision. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). It is immaterial that the evidence would support a finding contrary to that reached by the Commissioner; the determination of the Commissioner as to a factual matter will stand if supported by substantial evidence because it is the Commissioner's job, and not the Court's, to resolve conflicts in the evidence. Sorenson v. Weinberger, 514 F.2d 1112, 1119 (9th Cir. 1975).

In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must review the whole record and uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. See, Sanchez v. Secretary of Health and Human Services, 812 F.2d 509, 510 (9th Cir. 1987); Jones v. Heckler, 760 F.2d at 995. If the Court concludes that the ALJ did not use the proper legal standard, the matter will be remanded to permit application of the appropriate standard. Cooper v. Bowen, 885 F.2d 557, 561 (9th Cir. 1987).

III. <u>Disability Findings</u>

In order to qualify for benefits, a claimant must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must demonstrate a physical or mental impairment of such severity that the claimant is not only unable to do the claimant's previous work, but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. 1382c(a)(3)(B); <u>Quang Van Han v. Bowen</u>, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden of establishing a disability is initially on the claimant, who must prove that the claimant is unable to return to his or her former type of work; the burden then shifts to the Commissioner to identify other jobs that the claimant is capable of performing considering the claimant's residual functional capacity, as well as her age, education and last fifteen years of work experience. <u>Terry v. Sullivan</u>, 903 F.2d 1273, 1275 (9th Cir. 1990).

The regulations provide that the ALJ must make specific sequential determinations in the process of evaluating a disability: 1) whether the applicant engaged in substantial gainful activity since the alleged date of the onset of the impairment, 2) whether solely on the basis of the medical evidence the claimed impairment is severe, that is, of a magnitude sufficient to limit significantly the individual's physical or mental ability to do basic work activities; 3)

whether solely on the basis of medical evidence the impairment equals or exceeds in severity certain impairments described in Appendix I of the regulations; 4) whether the applicant has sufficient residual functional capacity, defined as what an individual can still do despite limitations, to perform the applicant's past work; and 5) whether on the basis of the applicant's age, education, work experience, and residual functional capacity, the applicant can perform any other gainful and substantial work within the economy. See 20 C.F.R. § 416.920.

Here, the ALJ found that Plaintiff had a serious impairment of an adjustment disorder with anxious mood, but had no impairment or combination thereof that met or equaled a listed impairment. Plaintiff had the residual functional capacity (RFC) to perform simple, repetitive tasks in an unskilled setting and had all the other requisite mental work-related abilities. (A.R. 16-19.)

After the ALJ issued his decision, Plaintiff obtained counsel, who requested review of the decision by the Appeals Council (AC) and submitted an opinion from Plaintiff's treating physician rendered after the date of the ALJ's decision. (A.R. 189-95, 191-94.) The administrative record reflects that the Appeals Council (AC) exhibit list includes a request for review with letters from Plaintiff's attorney dated October 24, 2006, and March 6, 2007, and a mental impairment questionnaire completed by Plaintiff's treating physician, Maximo Parayno, M.D., dated November 16, 2006. (A.R. 4, 189-90, 195, 191-94.) The AC's notice of denial of the request for review reflects that the AC considered the reasons Plaintiff disagreed with the decision

1  "and the additional evidence listed on the enclosed Order of
2  Appeals Council." (A.R. 5.) The AC thus considered Dr. Parayno's
3  opinion of November 16, 2006. The AC denied Plaintiff's request
4  for review because it found no reason under its rules to review
5  the ALJ's decision. (A.R. 5.) It stated that under its rules, it
6  would review cases if the ALJ appeared to have abused his or her
7  discretion, there was an error of law, the decision was not
8  supported by substantial evidence, there was a broad policy or
9  procedural issue that might affect the public interest, or if the
10 AC received new and material evidence, and the decision was
11 contrary to the weight of the all the evidence then in the
12 record. (AR. 5.) The AC concluded that the information provided
13 did not provide a basis for changing the ALJ's decision. (A.R.
14 6.)

     IV. <u>Treatment of Treating Physician's Opinion</u>

     Plaintiff argues that the AC abused its discretion in failing to remand the case on the basis of a change in the weight of the evidence due to Dr. Parayno's post-hearing opinion, and it further erred in failing to state reasons for rejecting Dr. Parayno's opinion.

     A. <u>Legal Standards</u>

     Regulatory law provides that the AC will review a case if there appears to be an abuse of discretion by an ALJ; there is an error of law; the action, findings, or conclusions of the ALJ are not supported by substantial evidence; or there is a broad policy or procedural issue that may affect the general public interest. 20 C.F.R. § 416.1470(a). When the AC denies review of an ALJ's decision, the ALJ's decision becomes the final agency decision.

6

20 C.F.R. § 416.1481. However, where the claimant submits evidence after the ALJ's decision, and the AC specifically considers that evidence, then this Court considers on appeal both the ALJ's decision and the additional material submitted to the Appeals Council. Ramirez v. Shalala, 8 F.3d 1449, 1451-52, 1454 (9th Cir. 1993). Regulatory law in turn provides that in reviewing decisions based on an application for benefits, if new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision; it will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record. 20 C.F.R. § 416.1470(b).

With respect to the Commissioner's reasoning concerning a treating physician's opinion, the pertinent legal standards are as follows:

> By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians. See 20 C.F.R. § 404.1527. If a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight." Id. § 404.1527(d)(2). If a treating physician's opinion is not given "controlling weight" because it is not "well-supported" or because it is inconsistent with other substantial evidence in the record, the Administration considers specified factors in determining the weight it will be given. Those factors include the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician; and the "nature and extent of the treatment relationship" between the patient and the treating physician. Id. § 404.1527(d)(2)(i)-(ii). Generally, the opinions of examining physicians are afforded more weight than those of non-examining physicians, and the opinions of examining non-treating

7

> physicians are afforded less weight than those of treating physicians. Id. § 404.1527(d)(1)-(2). Additional factors relevant to evaluating any medical opinion, not limited to the opinion of the treating physician, include the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; the specialty of the physician providing the opinion; and "[o]ther factors" such as the degree of understanding a physician has of the Administration's "disability programs and their evidentiary requirements" and the degree of his or her familiarity with other information in the case record. Id. § 404.1527(d)(3)-(6).

Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007).

With respect to proceedings under Title XVI, the Court notes that an identical regulation has been promulgated. See, 20 C.F.R. § 416.927.

As to the legal sufficiency of the ALJ's reasoning, the governing principles have been recently restated:

> The opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant. Lester [v. Chater, 81 F.3d 821, 830 (9th Cir.1995) (as amended).] Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record. Id. (internal quotation marks omitted). Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record. Id. at 830, quoting Murray v. Heckler, 722 F.2d 499, 502 (9th Cir.1983). This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. Magallanes [v. Bowen, 881 F.2d 747, 751 (9th Cir.1989).] The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct. Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir.1988).
> Reddick v. Chater, 157 F.3d 715, 725 (9th Cir.1998); accord Thomas, 278 F.3d at 957; Lester, 81 F.3d at 830-31.

Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007).

8

B. <u>Factual Background</u>

With respect to the ALJ's treatment of the medical record, the ALJ characterized the medical records as sparse. (A.R. 17.) The Court notes that there was no assessment of Plaintiff's capacities by Plaintiff's treating physician.

The ALJ noted Plaintiff's having been under the care of Dr. Maximo Parayno since May 2002 for symptoms of insomnia, nightmares, poor appetite, low energy, forgetfulness, and feelings of hopelessness, with diagnoses of post traumatic stress disorder (PTSD) and depressive disorder, a March 2004 global assessment of functioning (GAF)[2] of 55, and treatment with anti-depressant medication. (A.R. 17.) Plaintiff testified taht Dr. Parayno was her psychiatrist. (A.R. 204.)

The ALJ also summarized the report of Dr. Shireen Damania, a board certified psychiatrist, who performed a consultative examination of Plaintiff on September 7, 2004. (A.R. 17-18, 113-16.) Plaintiff had spoken rapidly and "in a dramatic manner" during the mental status examination; at times she appeared histrionic. She initially inhaled from a bottle of liquid stating she was dizzy,[3] then started massaging her leg indicating that she had leg pain, and then she started gagging into a Kleenex

---

[2]. A GAF, or global assessment of functioning, is a report of a clinician's judgment of the individual's overall level of functioning that is used to plan treatment and to measure the impact of treatment as well as to predict its outcome. American Psychiatric Association, <u>Diagnostic and Statistical Manual of Mental Disorders</u> at 32 (4th ed., text revision) (DSM-IV-TR). A GAF of 55 (i.e., within the range of 51 through 60), indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).

[3] Plaintiff had an impairment of dizziness, for which she was treated with Meclizine; the ALJ concluded that the impairment was a slight impairment that had only minimal, if any, effect on her ability to work. (A.R. 16.)

9

"suggestive of attempting to exaggerate symptoms." However, when she was informed that if this continued, perhaps it would be better to stop the interview, she stated that she was fine. Her mood was mostly euthymic, and at times she appeared to be mildly anxious. Affect was appropriate to the thought content and situation. She denied any suicidal or homicidal ideations, she was vague about auditory hallucinations, no delusional thinking was noted, and there was no evidence of a thought disorder. Memory for recent and past recall was grossly intact, attention span was within normal limits, she had no difficulty concentrating, and insight and judgment were fair. When asked what two plus two was, she promptly indicated that it was "three," "suggestive of some enhancement of symptoms." Dr. Damania diagnosed an adjustment disorder with anxious mood, dizziness by history, mild level of psycho-social stressors, and rated her GAF at 55. The doctor concluded that Plaintiff would be able to understand, carry out, and remember simple one-step and two-step instructions in an unskilled setting. Additionally, she would be able to respond appropriately to co-workers, supervisors, and the public, and respond to work situations and deal with changes in a routine setting. (A.R. 17-18.)

The ALJ also alluded to the opinion of October 2004 of state agency psychiatrist Dr. Garcia, who concluded that Plaintiff could perform simple, repetitive tasks on a sustained basis and had all the other requisite mental work-related abilities. (A.R. 18, 120-23.)

The ALJ's reasoning concerning the opinions was as follows:
Weighing all the relevant factors, I find the claimant's

10

> mental impairment is not as severe as she alleges. The claimant does not attend any group therapy sessions and only sees Dr. Parayno mostly for medication refills. Drs. Parayno and Damania both rated the claimant's GAF at 55 which suggests moderate symptoms in social and occupational functioning (Exhibits 1F, p. 4; 6F, p. 14). She is able to shop, cook some, attend church regularly, and deal with her wayward son and husband (Exhibit 4E, p. 7; testimony). Furthermore, during the consultative examination it appeared that she was attempting to enhance her symptoms (Exhibit 1F, p. 2).
>
> As for the opinion evidence, the State agency psychiatrist Dr. Garcia and the psychiatric consultative examiner Dr. Damania both concluded that the claimant was able to perform simple repetitive tasks on a sustained basis and had all the other requisite mental work-related abilities (Exhibits 1F, p. 4; 2F, pp. 1-3.) I find these opinions consistent with the objective medical evidence and entitled to great weight.

(A.R. 18.)

In contrast, the opinion of Dr. Parayno rendered on November 16, 2006, indicated that Plaintiff had a GAF of 50-55 at that time, and her highest GAF within the past year was 50-55.[4] (A.R. 191-94.) The doctor had stopped indicating GAF levels after February 2004. (A.R. 162, 149-61.) Thus, the November 2006 opinion indicated that Plaintiff's GAF reflected moderate to serious symptoms for the past year, whereas previous GAF levels had reflected only moderate symptoms.

Further, Dr. Parayno opined that Plaintiff's impairments or treatment would cause Plaintiff to be absent from work more than three times a month. (A.R. 193.) Plaintiff would have difficulty working at a regular job on a sustained basis because she had poor concentration and attention span and was unable to focus on

---

[4] A GAF of 50 (i.e., in the range of 41-50) indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). DSM-IV-TR at 34.

11

tasks, had poor memory, and forgot her appointments unless reminded. (A.R. 194.) Dr. Parayno assessed Plaintiff as having marked difficulties in maintaining social functioning; frequent deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner (in work settings or elsewhere); and often or twice episodes of deterioration or decompensation in work or work-like settings which would cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms, which might include deterioration of adaptive behaviors. (A.R. 194.) He stated that Plaintiff could not manage benefits in her own best interest. (Id.)

Dr. Parayno's opinion was supported by explanations of Plaintiff's symptoms. He noted that she had poor memory, sleep disturbance, depressed mood and mood disturbance, time or place disorientation, social withdrawal or isolation, blunt, flat or inappropriate affect, decreased energy, anhedonia or pervasive loss of interests, psychomotor agitation or retardation, feelings of guilt/worthlessness, difficulty thinking or concentrating, intrusive recollections of a traumatic experience, poor memory and forgetfulness, and suicidal feelings without a plan. Dr. Parayno specifically indicated that Plaintiff was not a malingerer, and that her impairments were reasonably consistent with the symptoms and functional limitations described in the evaluation. (A.R. 191-92.) He explained that Plaintiff was treated with antidepressant medications, anti-psychotic medication to suppress nightmares and flashbacks, appetite stimulant, and hypnotic medications (Wellbutrin, Effexor,

Trazodone, Seraquel, and one other (illegible)) that caused dryness of the mouth, gastric upset, constipation, and drowziness; her prognosis was fair to guarded. (A.R. 192-93.) Further, Plaintiff's psychiatric condition exacerbated Plaintiff's experience of pain because her depressive symptoms decreased tolerance to pain. (A.R. 193.) Dr. Parayno diagnosed PTSD, delayed; major depressive disorder, current; chronic pain; cultural and language handicap, with current and past year highest GAF of fifty to fifty-five. (A.R. 191.)

The Court further notes that a review of Dr. Parayno's notes and treatment records reveals diagnoses, symptoms, and signs consistent with those noted by Dr. Parayno on the mental impairment questionnaire, covering a time period from the middle of 2002 through March 2006; Plaintiff was seen every six to eight weeks. (A.R. 149-76, 191.) Plaintiff reported events such as nightmares, hallucinations, misplacing objects at home, burning food that she had forgotten that she had put on the stove, and difficulties with jury service, that were consistent with the doctor's reports and assessments.

However, the records do not simply reflect Plaintiff's subjective reports of symptoms; rather, they also contain signs recorded by the expert. A "symptom" is the claimant's own description of a physical or mental impairment. 20 C.F.R. § 416.928(a). "Signs" are anatomical, physiological, or psychological abnormalities which can be observed apart from symptoms; signs must be shown by medically acceptable clinical diagnostic techniques. § 416.928(b). Psychiatric signs are medically demonstrable phenomena which indicate specific

13

abnormalities of behavior, affect, thought, memory, and orientation. Id. They must also be shown by observable facts that can be medically described and evaluated. Id.

Here, the records reflect frequent mental status examinations that often revealed that Plaintiff was not oriented, had poor recent and remote memory, exhibited forgetfulness with calculations, and poor concentration.

### C. Analysis

The ALJ did not state specific, legitimate reasons, supported by substantial evidence in the record, that warranted limited weight or rejection of the treating physician's opinion as to Plaintiff's ability to work.

The ALJ did not evaluate the opinion of Dr. Parayno because it was not before the ALJ. The ALJ stated that the opinions of Dr. Garcia and Dr. Damania were consistent with the objective medical evidence and entitled to great weight. The Court is wary of transferring this reasoning to an opinion that was not before the ALJ; Dr. Parayno's opinion was not necessarily inconsistent with either the subjective complaints of the Plaintiff or with the objective signs recorded in the doctor's treatment record. To the extent that this reason may be read as a reason for rejecting a contrary opinion about Plaintiff's abilities, such as Dr. Parayno's opinion, it fails to reflect consideration of the very factors that must be weighed in evaluating a treating source's opinion, such as whether it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in case record, and further factors that may be considered, such as the

14

length of the treatment relationship, frequency of examination, the amount of relevant evidence that supports the opinion and the quality of the explanation provided, the consistency of the medical opinion with the record as a whole, the specialty of the physician providing the opinion, and the degree of his or her familiarity with other information in the case record. See, Orn v. Astrue, 495 F.3d 625, 631; 20 C.F.R. § 416.927.

The Appeals Council apparently considered Dr. Parayno's opinion. On the basis of the record presently before this Court, it is reasonably inferred that Dr. Parayno's opinion, rendered two months after the ALJ's decision, related to the period on or before the date of the administrative law judge's hearing decision because it chronicled a multi-year treatment relationship and symptoms that were experienced over that time, and it included a GAF assessment for the past year.

The only reasoning stated by the Appeals Council was that the new information did not provide a basis for changing the ALJ's decision. This reasoning is not supported by substantial evidence. The ALJ's findings and conclusions were contrary to the weight of the evidence of record before the Appeals Council. The ALJ relied on the fact that both Drs. Parayno and Damania rated Plaintiff's GAF at 55; yet the new opinion rated Plaintiff's GAF at 50-55, which indicated more severe problems. The ALJ noted that the evidence suggested that Plaintiff had moderate symptoms in social and occupational functioning. However, Dr. Parayno's opinion clearly assigned marked difficulties in maintaining social functioning, frequent (marked) deficiencies in concentration, persistence, or pace, and more

than three absences per month. The ALJ relied on the limited record of Dr. Damania's and Dr. Garcia's opinions and concluded that Plaintiff was attempting to enhance her symptoms, but Dr. Parayno, who had examined and treated Plaintiff for years, concluded that Plaintiff was not a malingerer and that Plaintiff's impairments were reasonably consistent with the symptoms and functional limitations he described in his opinion. In evaluating the severity of Plaintiff's mental impairment, the ALJ relied on the fact that Plaintiff did not attend any group therapy sessions and saw Dr. Parayno mostly for refills of medication. However, Dr. Damania documented that Plaintiff's failure to attend any group therapy sessions was because she did not particularly like to be around a lot of people. (A.R. 114.) Dr. Parayno mentioned in his opinion that Plaintiff had symptoms of social withdrawal or isolation. (A.R. 191.) Thus, the evidentiary basis for the ALJ's reasoning had significantly shifted.[5]

    These are significant disparities in the state of the record, and the weight of the evidence, before and after the inclusion of Dr. Parayno's opinion. It is concluded that substantial evidence did not support the reason stated by the Appeals Council.

    V. <u>Remedy</u>

    It is established that where the ALJ has failed to provide legally sufficient reasons for rejecting the opinion of a

---

[5] The Court notes that in some circumstances the failure of a depressed individual to seek treatment does not suffice to support rejection of an opinion for lack of treatment. See <u>Nguyen v. Chater</u>, 100 F.3d 1462, 1465 (9th Cir. 1996).

treating physician, an immediate award of benefits should be directed where there are no outstanding issues that must be resolved before a determination of disability can be made, and it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000).

Here, if the opinion were credited, it is not clear that the ALJ would be required to find that Plaintiff was disabled. Dr. Parayno's opinion, which was very general with respect to articulation of any limitations, has not been interpreted, and no vocational evidence was presented regarding any limitations imposed by Dr. Parayno. This is a situation in which the ALJ has not had an opportunity to evaluate the additional evidence. Accordingly, the appropriate remedy is not to remand for an award of benefits, but rather is to remand for the purpose of permitting the ALJ to consider the additional evidence with respect to Plaintiff's RFC, permit the introduction of appropriate additional evidence from the parties, and to conduct all necessary further proceedings to complete the sequential analysis. Harman v. Apfel, 211 F.3d 1172, 1180.

VI. Disposition

Accordingly, it IS ORDERED that

1. Plaintiff's social security complaint IS GRANTED, and

2. The matter IS REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration, consistent with this decision, of Plaintiff's status as disabled, including Plaintiff's residual functional capacity, and, to the extent appropriate, whether Plaintiff could perform her past work, and

whether on the basis of the Plaintiff's age, education, work experience, and residual functional capacity, Plaintiff could perform any other gainful and substantial work within the economy; and

3. Judgment BE ENTERED for Plaintiff Souvanhy Soulisack and against Defendant Michael J. Astrue.

IT IS SO ORDERED.

**Dated:   May 23, 2008**             /s/ Sandra M. Snyder
                                   UNITED STATES MAGISTRATE JUDGE